Kaplan, Mitchell H., J.
This action arises out of plaintiff Joel J. Niederhauser’s contention that on October 23, 2009 he submitted a solution to a challenge problem posted by defendants Paradigm Geophysical Corp. and Paradigm, B.V. (collectively, Paradigm)[1] on defendant Innocentive, Inc.’s crowd-sourcing challenge/solution website. According to the complaint, Niederhauser’s solution met all of the requirements of the challenge, he was therefore entitled to the posted prize ($100,000), but Paradigm wrongfully failed to accept his solution and pay the award. The court previously allowed InnoCentive’s motion to dismiss. This memorandum of decision will address Paradigm’s motion to dismiss for failure to state a claim on which relief may be granted. See Mass.RCiv.P. 12(b)(6). For the reasons that follow, Paradigm’s motion is ALLOWED.
FACTS
The following facts are taken from the allegations of the complaint and for purposes of this motion assumed to be true. Because the complaint relies on written agreements, copies of which have been provided by Paradigm, the terms of those agreements are also referenced.
Niederhauser lives in Switzerland. He holds advanced degrees in electrical engineering and is president of a firm that provides engineering support to technology companies. Paradigm develops and markets software used in the oil and gas industries to interpret seismic data. InnoCentive is based in Wal-tham, Massachusetts. It maintains a so-called crowd sourcing website that allows individuals or firms seeking solutions (called “Seekers”) to problems (called “Challenges”) to post the Challenges, where they will be viewed by many potential problem solvers over the internet. Individuals who submit proposed solutions to the Challenges are called Solvers.
InnoCentive’s website contains Terms of Use that anyone seeking to solve a Challenge must accept. The Terms of Use clearly state, among other things, that:
Your use of the site forms a legally binding contract with [InnoCentive] based on these Terms of Use. If you have registered as a Solver, you will be bound to these Terms of Use as well as additional terms in the applicable Solver Agreement or Challenge Specific Agreement.
. . . [Y]ou acknowledge that InnoCentive does not control in any manner the nature, quality, legality or timing of InnoCentive Challenges. You agree that InnoCentive is a neutral forum for InnoCentive Challenges and Solver Proposed Solutions . . .
InnoCentive has no control over, and is not responsible for the acts or omissions of Seekers [those submitting Challenges).
To be able to solve [Challenges] and access information in the Project Rooms, you must register as a Solver and agree to the additional terms and conditions set forth in the Challenge-Specific Solver Agreement that may be applicable to individual [Challenges].
Paradigm’s Challenge Specific Agreement posted on the InnoCentive website included the following terms:
The Seeker for this InnoCentive Challenge has required that you accept these special terms, so please take the time to understand them.
If you click “I agree” and proceed to the Project Room for this [Challenge], the Challenge-Specific Agreement will be a valid and binding agreement for all purposes relating to this InnoCentive Challenge and in addition to your agreement to abide by the Terms of Use when you registered as a Solver.
The Seeker has absolute and sole discretion to determine whether to Accept your Proposed Solution, or any Proposed Solution. The meeting of the Solution Acceptance Criteria does not mean that the Proposed Solution will be accepted by a Seeker
[[Image here]]
If a Seeker Accepts your Proposed Solution, the payment amount (called an “Award” [$100,000]) specified in the InnoCentive Challenge posted on *430 the Service by a Seeker . . . shall be paid to you by InnoCentive within thirty days after you are notified by InnoCentive of Your Proposed Solution’s Acceptance . . .
In case of any conflict between the terms of the Challenge Specific Agreement and the Terms of Use, the Challenge Specific Agreement Controls . . .
Paradigm’s Challenge contained a lengthy, detailed description of the problem, i.e., Challenge, and the criteria that a Solver would have to meet for a submission to constitute a solution. Neiderhauser spent more than three weeks working on the Challenge. On October 23, 2009, Niederhauser submitted to Paradigm a solution that met all of the criteria listed in the Challenge.[2] On January 19, 2010, Paradigm told Niederbauser that it had evaluated his solution and it did not meet all of the criteria. Niederhauser continued to communicate with Paradigm in an effort to convince it that his solution did meet the criteria, without success. On March 13, 2013, Paradigm announced that it had completed evaluation of all submissions and removed the Challenge, apparently without accepting any Solver’s solution. In any event, Paradigm never paid Niederhauser the $100,000. There is no allegation in the complaint that Paradigm ever made use of Niederhauser’s solution.
This action was filed on February 17, 2015,[3] slightly more than five years after Neiderhauser’s solution was rejected. It is pled in six counts: Count I—Breach of Contract; Count II—Breach of the Covenant of Good Faith and Fair Dealing; Count III—Civil Conspiracy; Count IV—Unjust Enrichment; CountV— Declaratory Judgment; and Count VI—Violation of Chapter 93A.
DISCUSSION
Although multiple counts are pled, the motion to dismiss turns on a single question of law: Under the circumstances alleged in the complaint, is Paradigm entitled to the benefit of the clearly stated contract term that it retains the right to reject any solution submitted by a Solver, even if it meets the posted criteria? The court concludes that Paradigm may properly rely on this contract term. Stated differently, there is no principle of law that prohibits Paradigm from conditioning its obligation to pay the $100,000 on a unilateral, discretionary right to decide if it will accept the solution. Clearly, the practical purpose of including such a right is to avoid just the type of litigation that Niederhauser has filed—a law suit in which the subj ect of the litigation is whether the Solver’s solution met the Seeker’s criteria. When Paradigm posted the Challenge, with a clearly stated retained right to reject any proposed solution, it may have discouraged many talented Solvers from undertaking the Challenge; however, it had the right to balance that risk with its desire to avoid being entangled in an expensive litigation over whether the technically complex criteria included in its Challenge had been met.
The “[¡Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense.” Massachusetts Mun. Wholesale Elec. Co. v City of Springfield, 49 Mass.App.Ct. 108, 111 (2000). See also Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992) (“It is elementary that an unambiguous agreement must be enforced according to its terms”). Here, the InnoCentive Terms of Use were simple and unequivocal in stating that: “Your use of the site forms a legally binding contract with [InnoC-entive] based on these Terms of Use. If you have registered as a Solver, you will be bound to these Terms of Use as well as additional terms in the applicable Solver Agreement or Challenge Specific Agreement.” (Emphasis supplied.) Paradigm’s Challenge Specific Agreement, again in simple language, repeated the admonition that its additional terms became a part of the contract, suggested to any potential Solver that she/he read the terms carefully, and then expressly stated: “The Seeker has absolute and sole discretion to determine whether to Accept your Proposed Solution, or any Proposed Solution. The meeting of the Solution Acceptance Criteria does not mean that the Proposed Solution will be accepted by a Seeker...” Niederhauser’s contention that these terms can reasonably be interpreted to mean something other than Paradigm does not have to accept any proposed Solution, even if it can be shown to meet the criteria, is unavailing.
Niederhauser next argues that the court should require Paradigm to pay the prize, notwithstanding the contract language, because the contract formed by the Terms of Use and the Challenge Specific Agreement is a “contract of adhesion.” While the contract here at issue “could well be described as a contract of adhesion in that it is [evident] that the parties [did not] actually negotiate . . . the provisions,” that does not mean that the contract will not be enforced pursuant to its clear and unambiguous terms. See Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 253 (1992). “Generally, . . . such contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances.” Id. There is nothing deceptive or devious in Paradigm’s terms, nor are they against public policy. In this internet based world of Seekers and Solvers, who never meet face-to-face, it is perfectly acceptable for the Seeker to retain for itself the unilateral right to reject any solution. Where potential Solvers are clearly warned that even a solution that could be shown to meet all the criteria may be rejected, they enter upon Solution generating work without any misapprehension that some third party can be called upon to adjudicate whether their Solution was adequate. There is no public policy offended by this contract term. Indeed, it is reasonable for a Solver which itself is risk and litigation adverse to include such a term, *431 with its potential for causing some potential, talented Seekers to steer clear of this Challenge, but potentially beneficial consequences to it.[4]
Niederhauser’s reliance on the covenant of good faith and fair dealing that is inherent in this contract, as in any contract, is also misplaced. “A breach of the covenant occurs when one party violates the reasonable expectations of the other. However the scope of the covenant is only as broad as the contract that governs the particular relationship. The covenant does not... create rights and duties not otherwise provided for in the contract. Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287-88 (2007) (internal citations and quotations omitted). Based on the contract terms, Niederhauser could not have had a reasonable expectation that he had a right to demand payment of the $100,000 prize by proving in court that his solution met the criteria. The covenant does not permit the court to impose on Paradigm a contract term that not only does not exist, but is specifically excluded by the terms stated.
ORDER
For the foregoing reasons, Paradigm’s motion to dismiss for failure to state a claim is ALLOWED.[5] As InnoCentive’s motion to dismiss was previously allowed, Final Judgment shall enter dismissing the complaint.

 It is alleged that Paradigm Geophysical Coip. is a Delaware Corporation with a principal place of Houston, Texas, and Paradigm B.V. is a private limited liability company that has its “headquarters in the Netherlands.” In the memoranda filed in support of and opposition to this motion, both parties treat the Paradigm entities collectively, without distinguishing the roles of each in the matters alleged in the complaint. The court will do the same.

 Paradigm comments that it does not agree that Niederhauser’s solution met its criteria, but acknowledges that for purposes of this motion to dismiss this allegation must be accepted as true.

 This action was originally filed in Middlesex Superior Court on that date. It was transferred to BLS-1 in Suffolk County by agreement of the parties. The entry date on the Suffolk Civil Action Docket reflects the date of the transfer.

 Given the prominent position of these contract terms in the Challenge posting, Niederhauser does not and could not reasonably allege that he did not read and was not aware of them before he entered the Project Room and began work on the Challenge. See Restatement (Second) of Contracts §211 (1979).

 he court, having found that the contract term that permitted Paradigm to reject any solution, even a solution that met the Challenge criteria was unambiguous, not deceptive or unconscionable, and enforceable, it is unnecessary specifically to address the Counts of the Complaint asserting claims for violation of Chapter 93A, unjust enrichment, civil conspiracy, and declaratory judgment. Similarly, the court also need not address Paradigm’s arguments for dismissal based on the expiry of statutory and contractual limitations periods. Finally, while the court has rejected Niederhauser’s arguments and dismissed his complaint, the court finds that his claims were novel and advanced in good faith and denies Paradigm’s claims for attorneys fees under G.L.c. 231, §6F.